[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 21-14331

Non-Argument Calendar

————————————

LUIS RALPHY TORRES,

Petitioner-Appellant,

*versus*

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
FLORIDA ATTORNEY GENERAL,

Respondents-Appellees.

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:18-cv-01337-MMH-JBT

———————————

Before NEWSOM, GRANT, and TJOFLAT, Circuit Judges.

PER CURIAM:

Luis Ralphy Torres, a Florida prisoner proceeding *pro se*, appeals the District Court for the Middle District of Florida's denial of his 28 U.S.C. § 2254 petition as untimely. We granted a certificate of appealability ("COA") on the issue of whether the District Court erred in determining that Torres's § 2254 petition was untimely based on its finding that his direct appeal ended 90 days after the District Court of Appeal for the First District of Florida (the "First DCA") entered its *per curiam* opinion affirming his conviction. Because the District Court did not address the impact, if any, of the Florida Supreme Court's *sua sponte* issuance of a stay in Torres's case, we vacate the District Court's order and remand to the District Court to consider this issue.

## I.

On June 11, 2010, a jury in the Circuit Court of the Fourth Judicial Circuit of Florida found Luis Ralphy Torres guilty of trafficking 28 or more, but less than 30, kilograms of oxycodone, in violation of Fla. Stat. Ann. § 893.135. He was sentenced to 30 years' imprisonment.

Torres appealed his conviction to the First DCA, challenging the constitutionality of Fla. Stat. Ann. § 891.135, as modified by

§ 893.101.[1]  The First DCA affirmed his conviction without opinion.  *Torres v. State*, No. 1D10-4346, 2011 WL 6167488 (Fla. 1st Dist. Ct. App. Dec. 8, 2011), *opinion withdrawn and superseded on clarification*, 80 So. 3d 416 (Fla. 1st Dist. Ct. App. 2012).

On December 20, 2011, Torres filed a Motion for Rehearing/Clarification.  He argued that he had challenged the facial constitutionality of an applicable statute and that the First DCA "issued a per curiam affirmance without including a citation even to recent cases from [the] court rejecting the argument."  Torres further argued that the constitutionality of the statute in question was currently before the Florida Supreme Court.[2]  He asked the First DCA to "clarify its decision by issuing a written opinion consisting of a citation to *Flagg v. State*, 36 Fla. Law Weekly D2276 (Fla. 1st DCA,

---

[1] Torres's public defender initially filed a brief claiming he found no nonfrivolous grounds for appeal pursuant to *Anders v. California*, 387 U.S. 738, 87 S. Ct. 1396 (1967).  Torres also filed a *pro se* brief raising several evidentiary issues from his trial.  Torres's public defender then moved to file a supplemental brief on the constitutionality of § 893.135.  The First DCA granted the motion, and Torres's public defender filed a supplemental brief arguing that § 893.135, as modified by § 893.101, is facially unconstitutional because the elimination of mens rea as an element violated Torres's due process rights under the Florida and United States constitutions.

[2] Torres's motion stated that the case currently pending before the Supreme Court of Florida was *State v. Adkins*, SC11-1878, which was argued on December 8, 2011.

Oct[.] 13, 2011), so that [the] issue will be preserved."[3]  On February 14, 2012, the First DCA granted Torres's motion, withdrew its December 2011 decision, and issued the following opinion: "AFFIRMED.  *See Flagg v. State*, 74 So. 3d 138 (Fla. 1st DCA 2011)."  *Torres v. State*, 80 So. 3d 416 (Fla. 1st Dist. Ct. App. 2012).

A month later, on March 12, 2012, Torres's counsel filed a Notice to Invoke Discretionary Jurisdiction of the Supreme Court of Florida because the First DCA's February 2012 opinion cited a case presently pending before the Florida Supreme Court that found a state statute constitutional.  As such, Torres argued that the Supreme Court of Florida could take jurisdiction of his appeal under Fla. R. App. P. 9.030(a)(2)(A)(i).[4]

On March 13, 2012, the First DCA issued the mandate for its February 14, 2012 opinion.  The same day, the Supreme Court of Florida filed an Acknowledgment of New Case stating that it had received Torres's Notice to Invoke Discretionary Jurisdiction. Three days later, on March 16, 2012, the Supreme Court of Florida issued the following *sua sponte* order: "the proceedings in this Court in [*Torres v. State*] are hereby stayed pending disposition of

---

[3] In *Flagg v. State*, the First DCA rejected an argument similar to Torres's: that § 893.13 was facially unconstitutional because the mens rea requirement in the statute was eliminated by § 893.101.  74 So. 3d 138, 140–41 (Fla. 1st Dist. Ct. App. 2011).

[4] Under Fla. R. App. P. 9.030(a)(2)(A)(i), "the discretionary [appellate] jurisdiction of the [S]upreme [C]ourt [of Florida] may be sought to review decisions of district courts of appeal that expressly declare valid a state statute."

21-14331                Opinion of the Court                        5

*State v. Adkins*, Case No. SC11-1878."[5]  On November 9, 2012, the Supreme Court of Florida entered the following order: "Having determined that this Court is without jurisdiction, this case is hereby dismissed. . . . No motion for rehearing will be entertained by the Court." *Torres v. State*, 105 So. 3d 523 (Fla. 2012).

On February 4, 2013, Torres filed a consolidated petition for *certiorari* in the United States Supreme Court.  The U.S. Supreme Court denied this petition on April 15, 2013.

Following the conclusion of his direct appeal, on August 5, 2013, Torres initiated a state collateral proceeding by filing a *pro se* Fla. R. Crim. P. 3.850 motion, which he amended on June 24, 2015. On May 16, 2016, Torres, through counsel, filed a motion for permission to file a supplemental memorandum of law, which the

---

[5] In *Adkins*, the Supreme Court of Florida reached the following conclusion:

> In enacting section 893.101, the Legislature eliminated from the definitions of the offenses in chapter 893 the element that the defendant has knowledge of the illicit nature of the controlled substance and created the affirmative defense of lack of such knowledge.  The statutory provisions do not violate any requirement of due process articulated by this Court or the Supreme Court.  In the unusual circumstance where a person possesses a controlled substance inadvertently, establishing the affirmative defense available under section 893.101 will preclude the conviction of the defendant.

96 So. 3d 412, 423 (Fla. 2012).  Following its decision in *Adkins*, the Supreme Court of Florida declined to exercise discretionary jurisdiction over *Flagg. See Flagg v. State*, 10 So. 3d 1083 (Fla. 2012).

Circuit Court for the Fourth Judicial Circuit granted.  On February 5, 2018, the Circuit Court denied Torres's Rule 3.850 motion for post-conviction relief.  On February 23, 2018, Torres, through counsel, appealed the denial of his Rule 3.850 motion.  Torres also filed a *pro se* motion for reconsideration of his Rule 3.850 motion on February 26, 2018.  The First DCA affirmed the denial without opinion.

On September 12, 2018, Torres filed the instant *pro se* § 2254 petition in the District Court for the Middle District of Florida.  The State responded by moving to dismiss Torres's § 2254 motion as untimely.  The State argued that Torres's judgment did not become final upon conclusion of direct review in the U.S. Supreme Court on April 15, 2013, as alleged by Torres, but rather, it became final 90 days after the First DCA entered its judgment—May 14, 2012—because the Supreme Court of Florida dismissed his case for lack of jurisdiction.  Torres did not file his petition for *certiorari* until June 4, 2013.  The State argued that because Torres's *cert* petition was untimely, it did not toll the Antiterrorism and Effective Death Penalty Act (the "AEDPA") statute of limitations.  The State went on to claim that Torres's time under the AEDPA ran for one year until it expired on May 15, 2012, because there were no properly filed state applications for post-conviction or other collateral relief pending in the interim.  Because the AEDPA statute of limitations had already expired, neither of Torres's Rule 3.850 motions could toll the statute of limitations, according to the State,

because "no time remained within the limitations period to toll." Torres's § 2254 petition was therefore over three years out of time.

Torres replied that he had filed a timely notice of intent to invoke the discretionary jurisdiction of the Supreme Court of Florida. In response to his notice, the Supreme Court of Florida entered an Acknowledgement of New Case and *sua sponte* stayed his case pending resolution of *Adkins*. Torres asserts that his notice was properly filed in the Supreme Court of Florida, which entertained it instead of dismissing it as unauthorized. In a supplemental filing, Torres claimed that while *Flagg v. State* was not pending before the Supreme Court of Florida, *Adkins*, which contained the same exact subject matter, was. Both *Flagg* and *Adkins* arose from *Shelton v. Sec'y, Dept. of Corr.*, 802 F. Supp. 1289 (M.D. Fla. 2011), which held that § 893.13 was facially unconstitutional. Torres argued that the Supreme Court of Florida "clearly recognized the linking subject matter and sua sponte stayed [his] proceedings pending disposition in *State v. Adkins*."

The District Court dismissed the § 2254 petition as untimely. According to the District Court, "[b]ecause the First DCA's opinion was not capable of review under Florida law, Torres'[s] judgment became final when the ninety-day period in which to file a petition for certiorari in the United States Supreme Court expired," or May 14, 2013. Order, Doc. 10 at 7–8. Torres did not file a motion that would have tolled the statute of limitations under § 2244(d)(2) until August 4, 2013, when he filed a Rule 3.850 motion. By that time, according to the District Court, the statute of limitations had

already expired.  Further, the District Court held that Torres failed to present an argument that equitable tolling should apply.

This Court granted a COA to determine: "Whether the district court erred in determining that Torres's § 2254 petition was untimely based on finding that his direct appeal ended 90 days after the Florida First District Court of Appeal entered its *per curiam* opinion affirming his conviction?"

On appeal, Torres argues that he is entitled to tolling because he properly invoked the Supreme Court of Florida's discretionary jurisdiction over his case and the Supreme Court later divested itself of that jurisdiction through a series of subsequent decisions, but through no fault of Torres's.[6]  Torres further argues that the AEDPA statute of limitations was properly tolled when the Supreme Court of Florida *sua sponte* stayed the proceedings because the Supreme Court of Florida "exercised de facto jurisdiction" over his proceeding.  Finally, Torres argues that if this Court

---

[6] According to Torres, when he sought discretionary review in the Supreme Court of Florida, he relied on the First DCA's citation to *Flagg*, in which the Supreme Court of Florida had yet to accept jurisdiction.  But rather than accept jurisdiction in *Flagg*, the Supreme Court of Florida stayed *Flagg* pending the disposition of *Adkins*, which involved the same subject matter and was the lead case on the subject matter.  *Adkins* was decided adversely to the *Flagg* appellant's argument, which caused the Supreme Court of Florida to decline to accept jurisdiction in *Flagg* as moot.  And with the dismissal of *Flagg* for mootness, the Supreme Court of Florida dismissed Torres's case for lack of jurisdiction.

finds that the *sua sponte* stay did not toll the AEDPA statute of limitations, he is entitled to equitable tolling.

The State, on the other hand, argues that the statute of limitations expired on May 14, 2013. It argues that because the Supreme Court of Florida did not have jurisdiction, Torres's motion did not toll AEDPA's statute of limitations. Because the Supreme Court of Florida did not have jurisdiction, the First DCA was the state court of last resort, and it entered its judgment on February 14, 2012. This gave Torres until May 14, 2012, to petition the U.S. Supreme Court for *certiorari*, which he did not do within that time frame. After May 14, 2012, the AEDPA statute of limitations ran unabated until it expired. Because they were filed after the AEDPA statute of limitations expired, Torres's Rule 3.850 motions could not have tolled the statute of limitations. Finally, the State argues that Torres is not entitled to equitable tolling because (1) he raises this argument for the first time on appeal; and (2) he fails on the merits because he does not show that extraordinary circumstances that were beyond his control and unavoidable prevented him from filing his petition on time.

## II.

We review *de novo* the District Court's dismissal of a § 2254 petition as untimely. *Pugh v. Smith*, 465 F.3d 1295, 1298 (11th Cir. 2006). We review legal conclusions regarding equitable tolling de novo and factual findings for clear error. *Cadet v. Fla. Dep't of Corr.*, 853 F.3d 1216, 1221 (11th Cir. 2017).

Pursuant to § 2244(d)(1), as amended by the AEDPA, a § 2254 petition is governed by a one-year statute of limitations period that begins to run on the latest of four triggering events. 28 U.S.C. § 2244(d)(1). The relevant triggering event in this case is the date on which the challenged judgment became final "by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* § 2244(d)(1)(A).

Direct review cannot conclude, for purposes of § 2244(d)(1)(A), until the availability of direct appeal to the state courts and to the United States Supreme Court has been exhausted. *Jimenez v. Quarterman*, 555 U.S. 113, 119, 129 S. Ct. 681, 685 (2009). Until that time, the process of direct review has not come to an end, and a presumption of finality cannot have attached to the conviction and sentence. *Id.* at 119–20, 129 S. Ct. at 685–86. Ordinarily, a state prisoner's conviction becomes final when the U.S. Supreme Court denies *certiorari* or issues a decision on the merits, or when the 90-day period in which to file a *certiorari* petition expires. *Nix v. Sec'y for Dep't of Corr.*, 393 F.3d 1235, 1236–37 (11th Cir. 2004). In *Chamblee v. Florida*, we stated that "in order to determine whether the 'entirety of the state direct appellate process has been completed,' as in *Jimenez*, this Court must look to the actions taken by the state court and the relevant state law." 905 F.3d 1192, 1196 (11th Cir. 2018) (internal citations omitted).

Under Florida law, "a judgment against a criminal defendant becomes final upon issuance of the mandate on his direct appeal." *Tinker v. Moore*, 255 F.3d 1331, 1333 (11th Cir. 2001) (citing *Jones*

21-14331                Opinion of the Court                11

*v. State*, 602 So. 2d 606, 607–08 (Fla. 1st Dist. Ct. App. 1992)).  We have clarified that the 90-day window in which to seek *certiorari* review by the U.S. Supreme Court begins to run upon the entry of the judgment, not the issuance of the mandate.  *Chavers v. Sec'y for Dep't of Corr.*, 468 F.3d 1273, 1275 (11th Cir. 2006).  However, the discretionary jurisdiction of the Supreme Court of Florida may be sought to review decisions of district courts of appeal that:

> (i) expressly declare valid a state statute; (ii) expressly construe a provision of the state or federal constitution; (iii) expressly affect a class of constitutional or state officers; (iv) expressly and directly conflict with a decision of another district court of appeal of the supreme court on the same question of law; (v) pass upon a question certified to be of great public importance; or (vi) are certified to be in direct conflict with decisions of other district courts of appeal.

Fla. R. App. P. 9.030(2)(A).  The Supreme Court of Florida has held that "a district court of appeal *per curiam* opinion which cites[,] as controlling[,] authority that is either pending review in or has been reversed by [the Supreme Court of Florida] continues to constitute prima facie express conflict and allows [the Supreme Court of Florida] to exercise its jurisdiction."  *Jollie v. State*, 405 So. 2d 418, 420 (Fla. 1981).  On the other hand, "mere citation" *per curiam* affirmances are not reviewable by the Florida Supreme Court.  *Id.* at 421.  The Florida Supreme Court later clarified that controlling authority that is pending review "refers to a case in which the petition for jurisdictional review has been granted and the case is pending

for disposition on the merits." *Harrison v. Hyster Co.*, 515 So. 2d 1279, 1280 (Fla. 1987).

The AEDPA's limitation period may also be equitably tolled if a petitioner shows (1) that he has been pursuing his rights diligently and (2) that some extraordinary circumstance prevented timely filing. *Holland v. Florida*, 560 U.S. 631, 649, 130 S. Ct. 2549, 2562 (2010). However, this Court has "repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this [C]ourt." *Walker v. Jones*, 10 F.3d 1569, 1572 (11th Cir. 1994) (internal quotations omitted).

Here, the important question is when Torres's direct appeal ended. The parties do not argue, and the District Court did not address, the impact of the *sua sponte* stay issued by the Florida Supreme Court on the finality of Torres's direct appeal under 28 U.S.C. § 2244(d)(1)(A). This Court must look to the actions taken by the state court and the relevant state law to determine whether the entirety of the state direct appellate process has concluded.

If the *sua sponte* stay had no effect on the finality of Torres's direct appeal because the Supreme Court of Florida did not have jurisdiction over Torres's appeal from the First DCA, Torres would have had 90 days from the entry of judgement from the First DCA before his conviction became final and the AEDPA statute of limitations started to run. Torres's *cert* petition would have been timely because it was filed after May 14, 2012. In this case, Torres's AEDPA statute of limitations would have run without being tolled until it expired on May 14, 2013.

If, however, the *sua sponte* stay means that Torres's direct appeal was still pending until the Supreme Court of Florida dismissed the case for lack of jurisdiction, then Torres's direct appeal ended on November 9, 2012. His petition for *certiorari* with the U.S. Supreme Court on February 4, 2013 was timely because it was within 90 days of the decision of the Supreme Court of Florida. In this case, Torres's one-year statute of limitations did not start running until the Supreme Court denied *certiorari* on April 15, 2013. Only 112 days would have passed when Torres filed his Rule 3.850 motion on August 5, 2013. The Rule 3.850 motion would have tolled the statute of limitations until it was denied on September 12, 2018. Torres filed his § 2254 petition on November 8, 2018—57 days after the denial of his Rule 3.850 motion. If the Supreme Court of Florida's *sua sponte* stay means Torres's direct appeal was still pending, Torres's § 2254 petition was timely filed because only 169 untolled days had passed.

Therefore, we vacate the District Court's order and remand for the District Court to consider in the first instance the impact of the *sua sponte* stay on the finality of Torres's direct appeal under § 2244(d)(1)(A) without reference to the "properly filed" and "tolling" language in § 2244(b)(2). As Torres did not raise the issue of equitable tolling before the District Court, this Court need not address that argument.

**VACATED AND REMANDED.**